Derbicny, J.
delivered the opinion of the Court*. The appellant, jointly with her husband Casimir Jaourcier, sold to Paul Lamisse, one of the appellees, some real estate and some slaves, *582 which, with the exception of one slave, were the' property of the Community.' Against this sale ¿he prays to be relieved, ailedging that the instrnment of sale was made without the solemnities required by law, and that she was prevailed upon to sign it, without being apprised of its contents,nor of the nature of the renunciations therein purporting to have been made.
East. District.

May 1815.

Altho' the wife sells common property, jointly with her husband, if she renounces a law not applicable to the case, she will not be bound.
On the part of the appellees, it is contended, 1.that to the alienation of the property of the community the appellant s consent was not necessary, inasmuch as by the custom of Paris, to which they have made a submission in their marriage contract, the husband has a right to dispose alone of the common property, as he pleases. 2. That supposing the Spanish laws to be those which ought to govern the effects of the marriage contract in this case, those laws do not, in case of sale of the common property, require any consent on the part of the wife to make such sales binding on her; and finally that the renunciations which by the Spanish laws were deemed necessary to bind the wife in those contracts where she was permitted to appear, must have ceased to be requisite since the promulgation of the Civil Code of this state, which recognises, without any restriction, that married women may enter into obligations,’jointly with their husbands.
I. The first question tq he decided is whether the *583 custom of Paris is the law which ought to govern the effects of this marriage contract, because the parties have chosen to submit to it. Had strangers made sucha submission in a foreign country subject to that law, there would be no doubt that it would continue here to regulate the effects of their contract. This is a principle not only adopted by the law of nations, but recognized among us by positive statute. But the parties, being in this country, entered into a contract, and stipulated that this contract should be governed by foreign laws. Had they a right to make such a stipulation ? We already had-occasion to say in a former case, that no power is bound to give effect, within its own territory, to the laws of a foreign country ; and that a foreign law has no other force than that which it derives from the consent of the government within the bonds of which it claims admission. According to this principle the general laws of the country must govern every case hut those which are permitted to be regulated by other laws. Is this such a case ? Is it to be found any where in our laws that a contract entered into in this state may, if the parties please, be governed by the laws of a foreign country ? So far from allowing any such thing, our laws, as they stood when this marriage took place, contain express prohibitions to the contrary. In Partidas 3d. tit. 14, law 15, it is said : “ If the laws or jurisprudence of another “country, over which our authority does not *584 “extend, should be appealed to, we order that in “oaf dominions they shall not be received as evi-“deuce, except in disputes arising between indi“viduals of such foreign country, or contracts made there.”
Our Civil Code has introduced some new dispositions in this respect concerning marriage contracts ; but they extend no further than permitting the parties to stipulate that their contract shall be regulated by the laws of any state or territory in the union..
We, therefore, think that the custom of Paris is not the law which ought to regulate the effects of the marriage contract in this case; and we" will proceed to examine whether according to the laws of the land the appellant ought to be relieved against the sale made by her jointly with her husband.
II. In order to understand the nature of the obligation here entered into by the appellant, and how far it may be binding on her, it is necessary to draw a distinction between those contracts to which the, wife may be a party principal jointly with her husband, and those where she makes her appearance in the character of a third party, for the only purpose of expressing her consent.
By the Spanish laws, independent of any change which is said to have been introduced in our Civil Code, the wile was inhibited from becoming security for her husband and when she *585 bound herself in solido with him, her obligat was to be. void, unless it was proved that the debt contracted had turned to her benefit. It ;was however admitted in practice that by renouncing the benefit of those laws, she could nevertheless bind herself. In cases of this kind, provided the renunciation was made with the requisite solemnities, so as to make it appear that she knew the nature anil extent of it and understood the provisions of the law, she became a party principal to the contract and partook with her husband in the engagement resulting therefrom. On the contrary, where the contract was one of those which the husband alone cou'd make, such as a sale of his property or of the property of the community, the wife, if consenting to the sale and willing to secure the purchaser against her claims, appeared in the character of a third party for the purpose of renouncing her right on the property sold.
Should the contract in this case appear in either of these forms, there would be no difficulty in applying the law to it. But this contract presents stranger features ; it purports to be a sale of the common property made jointly, by the husband and the wife, and contains at the same time a renunciation on the part of the wife *to a law which is applicable to cases of obligations contracted by the wife in solido with her husband ; or in other words, the appellant appears as a party seller in a sale which her husband alone had a right to *586 make, and renounces the benefit of a law which has nothing to do with contracts of this kind.
How to apply the law to such a case is certainly no easy task. On the one hand we see, on the face of this contract, that the appellant had not that information which is absolutely requisite, that is to say, a clear idea of the nature of her rights and the extent of her renunciation ; for she does what she had no right to do, and renounces a law, which is not made for such a cáse. But, on the other hand, ought not her voluntary concurrence in the sale amount at least to a consent? And will not her engagement to secure the purchaser against all incumbrances be considered as including a renunciation of her own rights ? The equity of the case is certainly in favor of the purchaser : but in matters of this kind we think we are bound by strict law. In consideration of the sort of tutelage in which married women are living, and to guard them, as much as possible, against compulsion in the disposal of their property, the jaws have Established certain rules, without an observance of which their acts are not valid. In' the particular case now before us, that of a sale of the common property by the husband, the character in which the wife may appear and the manner in which she is to act are described by positive law. She must say: that she well knows the right which she had on the property sold by her husband, that she renounces that right, whether she *587 had it for reason of dowry, donation propter nup-tins or other cause, and that she transfers it to the purchaser ; (see the above cited 58th law, tit. 18, part. 3.) Instead of this what has she done? She has assumed the character of a seller herself, and has renounced the benefit of a law which is foreign to this case. The first requisite for the validity of her obligation, to wit, her knowledge of her rights and of the nature of her renunciation is here evidently wanting: nay, her ignorance of them is stamped on the face of the obligation. No equitable construction can cure such a defect. The act, as to her, must be pronounced a nullity.
After the distinction which has been drawn, it is unnecessary to observe that the innovations said to be introduced by the Civil Code in matters of obligations, contracted jointly by husband and wife, should such innovations really have taken place, would not affect this case..
It is, therefore, adjudged and decreed that the judgment of the District Court be reversed, and that judgment be entered for the appellant for the amount of her marriage portion, to wjt, four thousand'dollars, and the slave‘named Laurette.
See post, June Term.

Mautin, J. did not join in this opinion, the case having been argued and submitted to the Court, with that of Brognier vs. Forstall in which he had been of counsel.